UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

PHARMACY CORPORATION OF
AMERICA, *et al.*,   Plaintiff,

v.   Civil Action No. 3:18-cv-754-RGJ

PREMIER HEALTHCARE
MANAGEMENT, LLC, *et al.*,   Defendants.

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiffs' Motion for Entry of Agreed Orders of Judgment (the "Motion") [DE 7], Plaintiffs' Motion for Status Conference [DE 27], and Plaintiffs' Motion for Entry of Scheduling Order [DE 28]. Fully briefed, the matter is ripe. For the reasons below, the Motion [DE 7] is **GRANTED IN PART,** Plaintiffs' Motion for Status Conference [DE 27] is **DENIED AS MOOT**, and Plaintiffs' Motion for Entry of Scheduling Order [DE 28] is **GRANTED IN PART**.

### I.  BACKGROUND

In late-2012, Plaintiffs[1] and Defendants[2] entered into a Pharmacy Services Agreement ("PSA"), in which Plaintiffs agreed to provide Defendants with pharmacy-related goods and services. [DE 7-5 at 381]. By mid-2017, Defendants were "significantly in arrears for past due invoices." [DE 1 at 7]. The parties began negotiating to resolve the matter. As a result of their negotiations, Plaintiffs and Defendants entered into seven settlement and forbearance agreements

---

[1] Defendants are Premier Healthcare Management, LLC and the following nursing homes: Champaign Urbana Nursing and Rehab, LP, Courtyard Healthcare Center, LLC, Gardenview Manor, LLC, Gilman Healthcare Center, LLC, Norridge Gardens, LLC, Pershing Gardens Healthcare Center, LLC, and Winfield Woods, LLC. [DE 7-5 at 380-381].
[2] Plaintiffs are Pharmacy Corporation of America and PharMerica Drug Systems, LLC. [DE 7-5 at 380].

1

(the "Settlement Agreements") to settle outstanding amounts owed by Defendants to Plaintiffs under the PSA.[3]  [DE 7-5 at 381].

Article V of the Settlement Agreements contains the terms of payment.[4]  [DE 1-2 at 66]. Under § 5.01 ("Acknowledgement of Debt"), Defendants agreed to pay Plaintiffs for all goods and services provided through and including May 31, 2017 (the "Old Balance").  *Id.*  Under § 5.02 ("Payment"), Defendants agreed to pay Plaintiffs the Old Balance plus interest at 5% per year (the "Forbearance Amount").  *Id.* at 66.  Under § 5.03 ("Payment for Goods and Services Provided After May 31, 2017"), Defendants agreed to pay Plaintiffs for all goods and services provided after May 31, 2017 (the "New Balance").  *Id.*  Under § 5.04 ("Agreed Order of Judgment"), Defendants agreed to sign Agreed Orders of Judgment.  [DE 7-1 at 241]  ("As an inducement for [Plaintiffs] to enter into the Settlement Agreements, the parties agreed that in the event of an uncured default under the Settlement Agreements by Defendants, [Plaintiffs] would be entitled to seek immediate entry by a court of the Agreed Orders").  § 5.06 ("Rights Upon Default"), the liquidated damages provision, provides:

> Upon the occurrence of an uncured Forbearance Default by [the Defendants], as set out in Section 4.02, [Plaintiffs] may file the Agreed Order of Judgment, and the entire Old Balance (less any payments made in accordance with **Section 5.01**, applied first to interest and then to principal, plus all amounts owed under **Section 5.02**, will be immediately due and payable without further notice or demand to [Defendants] (the 'Accelerated Balance').  The Accelerated Balance will earn interest at the rate of 18% per annum from the date of a non-cured default until paid in full . . ."

[DE 1-2 at 67]  (emphasis added).

---

[3] Each Settlement Agreement is between Plaintiffs, on one hand, and Premier and one of the nursing homes, jointly and severally, on the other.  [DE 7-1 at 240].
[4] The Settlement Agreements are "substantially identical except for the . . . names, the amounts owed, and the payment schedule."  [DE 7-1 at 239].

2

Plaintiffs allege that by January 2018 "Defendants were behind on payments due for invoices issued after May 31, 2017 and had failed to make payments due under the Settlement Agreements." [DE 7-5 at 383]. According to the Settlement Agreements, Plaintiffs notified Defendants of their defaults. *Id.* at 384. Defendants "paid the amounts owed under the Settlement Agreements" for the Old Balances but did not pay all the post-May 31, 2017 invoices. *Id.* Plaintiffs assert that Defendants ultimately "never became current with respect to the post-May 31, 2017 invoices" and eventually defaulted again on payments on the Old Balances. *Id.* To collect on Defendants' debt, Plaintiffs filed the present motion asking the Court to enter the Agreed Orders of Judgment against Defendants. [DE 7]. Defendants responded [DE 23], and Plaintiffs replied [DE 24].

## II.  STANDARD[5]

This action is in federal court based on diversity jurisdiction. *See* 28 U.S.C. § 1332. Because Kentucky is the forum state, the Court will use its substantive law. *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 526 (6th Cir.2006). That said, federal procedural law will govern, including in establishing the appropriate summary judgment standard. *Weaver v. Caldwell Tanks, Inc.*, 190 Fed. App'x 404, 408 (6th Cir.2006).

Summary judgment is required when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving

---

[5] Plaintiffs' Motion is one for summary judgment under Fed. R. Civ. P. 56(a). In their Motion, Plaintiffs stated that they do not object to their Motion being analyzed under the summary judgment standard, and the Court is unaware of any Sixth Circuit precedent holding that such an approach is improper. [DE 7-1 at 239]. The Court will therefore examine the issues under the summary judgment standard. *See Pharmacy Corp. of Am. v. Concord Healthcare Grp., LLC*, No. 3:17-CV-00037-GNS, 2017 WL 1380471, at *3 n.4 (W.D. Ky. Apr. 14, 2017), appeal dismissed, 708 F. App'x 275 (6th Cir. 2018) (analyzing a motion to enter an agreed order of judgment under the summary judgment standard); s*ee Nichols v. Zurich Am. Ins. Co.*, 423 S.W.3d 698, 708 (Ky. 2014) (analyzing application of doctrine of mutual mistake under the summary judgment standard).

party bears the burden of specifying the basis for its motion and showing the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the nonmoving party must produce specific facts showing a material issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Factual differences are not material unless the differences are such that a reasonable jury could find for the party contesting the summary judgment motion. *Id.* at 252.

The Court must view the evidence and draw all reasonable inferences in a light most favorable to the nonmoving party. *Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000). But the nonmoving party must do more than show some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party must present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" *Shreve v. Franklin Cty., Ohio*, 743 F.3d 126, 136 (6th Cir. 2014). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Liberty Lobby*, 477 U.S. at 252.

### III. DISCUSSION

Plaintiffs have moved the Court to enter the tendered Agreed Orders of Judgment, thereby allowing Plaintiffs to collect on Defendants' outstanding debt. [DE 7-1 at 248]. Plaintiffs' request, on its face, seems straightforward. Defendants agreed in § 5.04 that their signature on the Agreed Orders of Judgment is "sufficient and proper evidence of the justness of the debt and their confession of the judgment and that no further evidence or appearance in open court is necessary

4

before entry by the Court of, and execution upon, the Agreed Order[s] of Judgment." [DE 7-1 at 242]. But the parties dispute the meaning of § 5.06.

Plaintiffs contend that § 5.06 contains a typographical or scrivener's error:

> **Sections 5.06 of the Settlement Agreements and the Agreed Orders mistakenly reference Sections 5.01 and 5.02, rather than Sections 5.02 and 5.03**. **This was clearly a scrivener's error**, as Section 5.01 was merely an acknowledgment by Defendants of the Old Balance that contains no payment obligations, and Section 5.02 sets forth the payment schedule of the Old Balance. Instead, it is clear that the reference to payments made in accordance with Section 5.01 of the Agreement should have been a reference to payments made in accordance with Section 5.02, and the reference to all amounts owed under Section 5.02 being owed in addition to the amount of the Old Balance should have been a reference to the amounts owed under Section 5.03.

[DE 7-1 at 243-244] (emphasis added).

Defendants, on the other hand, claim that § 5.06 reflects the parties' intent and should not be modified: "Plaintiffs acknowledge that Section 5.06 only relates to Old Balances but then ask the Court to *sua sponte* rewrite the contact to extend their relief to the 'New Balances' referenced in Section 5.03 – calling the clear contract and unambiguous language a 'typographical error.' This was not a typographical error – ruling that it is such requires far more than the argument of counsel." [DE 23 at 461].

Implicit in Plaintiffs' Motion is a request for the Court to reform the Agreed Orders of Judgment so that Plaintiff can collect on both the Old and New Balances. As discussed below, Plaintiffs have not provided "clear and convincing evidence" of the parties' intent. Thus, the Court finds that there is a genuine issue of material fact about whether the parties intended § 5.06 and the Agreed Orders of Judgment to reference § 5.01 or § 5.03. That said, the Court finds that there are no genuine issues of material fact precluding it from entering the Agreed Orders of Judgment as to the Old Balance owed under § 5.02.

5

**A.    There is a genuine issue of material fact about whether the parties intended § 5.06 and the Agreed Orders of Judgment to reference § 5.01 or § 5.03.**

Plaintiffs acknowledge that the plain language of § 5.06 only includes repayment under § 5.01 and § 5.02. [DE 7-1 at 242]. But Plaintiffs contend that § 5.06 contains a scrivener's error and thus does not reflect the parties' intent for § 5.06 to reference § 5.03, not § 5.01. *Id.*

Although Plaintiffs do not explicitly move the Court to reform the Agreed Orders of Judgment under the doctrine of mutual mistake, courts have analyzed contentions of scrivener's error as allegations of mistake. *See Rams v. Cordish Operating Ventures*, LLC, No. 3:16-CV-233-DJH-CHL, 2018 WL 2765818, at *4 (W.D. Ky. Apr. 9, 2018) (analyzing allegation of scrivener's error under doctrine of mutual mistake); s*ee also Pannell v. Shannon*, 425 S.W.3d 58, 67 (Ky. 2014) ("[W]hile scrivener's error can be grounds for reforming a contract as the result of mutual mistake, it is the well-established rule . . . that reformation of an executed contract on the ground of mistake will not be decreed unless the mistake be established by full, clear, and decisive evidence, and the ground of relief must appear beyond reasonable controversy") (quoting *Nichols v. Nichols*, 182 Ky. 18, 205 S.W. 953, 954 (1918) (internal quotations omitted).

A court has the power to reform a written agreement "where, due to a mutual mistake by the parties, the instrument as drawn does not accurately express the true intention or agreement of the parties." *Nichols v. Zurich Am. Ins. Co.*, 423 S.W.3d 698, 703 (Ky.2014) (quoting 66 Am.Jur.2d Reformation of Instruments § 20 (2013)). But before a court can exercise this power, the party seeking reformation must prove, "beyond a reasonable controversy by clear and convincing evidence," that the mistake was mutual and that "the parties had actually agreed upon terms different from those expressed in the written instrument." *Id.* at 702–03 (quoting *Abney v. Nationwide Mut. Ins. Co.*, 215 S.W.3d 699, 704 (Ky.2006) (internal quotation marks omitted).

"[T]he mistake of a scrivener in drafting a document may be reformed based upon parol evidence." *Cadleway Properties, Inc. v. Bayview Loan Servicing, LLC*, 338 S.W.3d 280, 287 (Ky. Ct. App. 2010) (quoting 66 Am.Jur.2d Reformation of Instruments § 19). "When one party maintains that there has been no mistake and that he has never expressed assent to any agreement other than the one stated in writing, the testimony and corroborating evidence of the party seeking reformation must be *extremely strong* in order to overcome the specific terms of the contract." *Spratt v. Carroll*, 399 S.W.2d 291, 293 (Ky. 1966) (emphasis added). In other words, "[w]here the evidence of mutual mistake in the preparation of a written contract is conflicting, and there is any doubt as to the right of reformation, it will be denied." *Hayes v. Hudson*, 209 Ky. 657, 273 S.W. 524, 525 (1925). "The sanctity of contracts as written should not be lightly set aside." *Francis v. Domino*, 251 Ky. 255, 64 S.W.2d 571, 573 (1933).

Plaintiffs argue that "the parties intended that the judgment would be for the Old Balance due under Section 5.02 of the Settlement Agreements and the post-May 31, 2017 invoices due under Section 5.03 of the Settlement Agreements pursuant to the terms of the PSA." [DE 7-1 at 242]. In support of this argument, Plaintiffs submit a single exhibit: an affidavit by Berard Tomassetti ("Tomassetti"), Senior Vice President and Chief Accounting Officer. In his affidavit, Tomassetti asserts that the Agreed Orders of Judgment provide that, upon default, Defendants will be liable to Plaintiffs for the Old and New Balances. [DE 7-5 at 383] ("The Agreed Orders each provide that the [Defendants] would be liable to [Plaintiffs] for the Old Balances that the [Defendants] agreed they owed to [Plaintiffs] in the Settlement Agreements . . . plus all amounts owed for invoices for services issued after May 31, 2017."). But, in fact, the Agreed Orders of Judgment do not provide that Defendants will be liable for both balances; they only provide that Defendants will be liable for the Old Balances. [*See, e.g.*, DE 7-2 at 251] ("Defendants shall pay

7

to [Plaintiffs] the amount of $124,219.45, less any payments made in accordance with Section 5.01 of the Agreement . . . plus all amounts owed under Section 5.02 of the Agreement"). Tomassetti's affidavit thus fails to prove by clear and convincing evidence that the parties intended § 5.06 to reference § 5.03, not § 5.01.

Plaintiffs also contend that they should prevail because Defendants offer no evidence to rebut their argument for reformation. [DE 24 at 466] ("Notably, it is not based on any evidence by Defendants, their principals, or the attorneys' who negotiated the Settlement Agreements on behalf of Defendants, with affidavits or otherwise, that [Plaintiffs'] reading of the parties' agreements is wrong."). But Tomassetti's affidavit is unclear on the parties' intent, and thus Defendants' citation to the plain language of § 5.06 and the Agreed Orders is enough to defeat summary judgment. *See Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) ("the nonmoving party must present affirmative evidence to defeat a properly supported motion for summary judgment"); s*ee Mangum v. Repp*, 674 F. App'x 531, 536 (6th Cir. 2017) ("As amended in 2010, Federal Rule of Civil Procedure 56 provides that parties asserting a genuinely disputed fact need only cit[e] to particular parts of materials in the record") (internal quotation marks omitted). The Court notes that the type of evidence that Plaintiffs contend Defendants should have submitted to defeat reformation is the type of evidence courts require to grant it (*i.e.*, affidavits from the attorneys who negotiated the agreement detailing the parties' intent).

When considering the evidence in the light most favorable to the Defendants, there is a genuine issue of material fact about whether the parties intended § 5.06 and the Agreed Orders of Judgment to reference § 5.01 or § 5.03. The Court acknowledges that § 5.06 is awkwardly written, and that sophisticated parties, like those involved here, do not generally create unenforceable settlement agreements. And although, as Plaintiffs note, Defendants do not offer additional

evidence that the Agreed Orders of Judgment reflect the parties' intent, the evidentiary value of Tomassetti's affidavit is not "extremely strong" so that it overcomes the specific terms of the Settlement Agreements. *See Spratt*, 399 S.W.2d at 293. Plaintiffs have not provided sufficient evidence of the parties' intent to merit reformation of the Agreed Orders of Judgment. *See French v. Boyle*, 230 Ky. 619, 20 S.W.2d 439, 440 (1929) (reversing reformation of contract despite testimony by several witnesses about intent to include missing provision); *Ins. Co. of N. Am. v. Evans*, 229 Ky. 613, 17 S.W.2d 711, 712 (1929) (affirming reformation of insurance policy based on testimony of plaintiff and three other witnesses who were present when plaintiff discussed the insurance policy with the agent); *Wheeler v. Keeton*, 262 S.W.2d 465, 466 (Ky. 1953) (affirming reformation of contract where all parties testified that the missing provision should have been included); *Karrick v. Wells*, 307 S.W.2d 929, 932 (Ky. 1957) (affirming reformation of deed based on testimony of multiple witnesses, including plaintiff's attorney and the notary public); *Deskins v. Leslie*, 387 S.W.2d 596, 596 (Ky. 1965) (affirming lower court's decision not to reform deed and finding information about terms of prior negotiations compelling); *Cadleway Properties, Inc. v. Bayview Loan Servicing, LLC*, 338 S.W.3d 280, 289 (Ky. Ct. App. 2010) (reversing reformation of agreement and finding that plaintiff's sole proof in support of summary judgment—an affidavit reciting inadmissible hearsay about the parties' intent—was insufficient).

**B.     There are no genuine issues of material fact precluding entry of the Agreed Orders of Judgment as to the Old Balance owed under § 5.02.**

The Court will uphold a provision providing for liquidated damages so long as it is liquidated damages and not a penalty provision. *United Serv. Auto. Assoc. v. ADT Sec. Serv., Inc.*, 241 S.W.3d 335, 340 (Ky. App. 2006). "Where, at the time of the execution of the contract, damages may be uncertain in character or amount, or difficult to reasonably ascertain, a provision for liquidated damages will be enforced, provided the amount agreed upon is not greatly

disproportionate to the injury which might result." *Id.* at 340–41. "The distinction between a penalty provision and one for liquidated damages is that a penalty is imposed to secure performance of the contract and liquidated damages are to be paid in lieu of performance." *Goetz v. Asset Acceptance*, LLC, 513 S.W.3d 342, 346 (Ky. Ct. App. 2016). "Courts today tend to favor liquidated damage provisions." *Id.*

Here, § 5.06 is the liquidated damages provision in the Settlement Agreements. Plaintiffs correctly assert that "Defendants do not dispute that they owe [Plaintiffs] significant sums of money, and Defendants' Response neither contests that Defendants agreed to the judgments in the amount of the Forbearance Amounts (which is a calculation of the Old Balances) nor offers any legal justification for why judgment in the amount of the Forbearance Amounts should not be entered as final judgments immediately." [DE 24 at 471]. Defendants also stipulated that the Agreed Order of Judgments are "sufficient and proper evidence of the justness of the debt and their confession of the judgment and that no further evidence or appearance in open court is necessary before entry by the Court of, and execution upon, the Agreed Order of Judgment." [DE 7-1, 242]. The Court thus finds that § 5.06 is enforceable because it becomes effective only upon default (*i.e.*, "in lieu of performance") and is not "greatly disproportionate to the injury that might result from a breach." *United Serv. Auto. Assoc.*, 241 S.W.3d at 341; *see Gatx Corp. v. Appalachian Fuels, LLC*, No. CIV.A. 09-41-DLB-EBA, 2011 WL 2260695, at *13 (E.D. Ky. June 7, 2011) (granting summary judgment and enforcing liquidated damages provision) ("The plain language of the Lease is clear—any rent or other amount not paid to Lessor when due shall bear interest from the due date until paid. Given the language of the lease agreement, [Plaintiff] is entitled to prejudgment interest at eighteen percent (18%) per annum on the past due rental payments prior to the termination of the Lease"); *see also Travelers Ins. Co. v. Corporex Properties, Inc.*, 798 F. Supp.

10

423, 428 (E.D. Ky. 1992) (quoting *Kilbourne v. Burt & Brabb Lumber Co.*, 111 Ky. 693, 64 S.W. 631, 632 (1901)) ("[I]f the language of the parties evinces a clear and undoubted intention to fix the sum mentioned as liquidated damages in the case of default of performance of some act agreed to be done, then the courts will enforce the contract"). The Court further finds that there are no genuine issues of material fact precluding it from entering the Agreed Orders of Judgment as to the Old Balance owed under § 5.02 and that doing so is appropriate as a matter of law.

## IV. <u>CONCLUSION</u>

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby **ORDERED:**

1) The Motion for Entry of Agreed Orders of Judgment [DE 7] is **GRANTED IN PART**.

2) Plaintiffs shall tender Agreed Orders of Judgment—updated to reflect the current amounts owed under the Old Balances—within **14 days** of the entry of this Order.

3) Plaintiffs' Motion for Status Conference [DE 27] is **DENIED AS MOOT**.

4) Plaintiffs' Motion for Entry of Scheduling Order [DE 28] is **GRANTED in part** as set forth below.

5) Pursuant to 28 U.S.C. 636(b)(1)(A), this matter is **REFERRED** to U.S. Magistrate Judge Regina S. Edwards for resolution of all litigation planning issues, a scheduling conference, entry of scheduling orders, consideration of amendments thereto, and resolution of all non-dispositive matters, including discovery issues. Judge Edwards is further authorized to conduct a settlement conference in this matter at any time. A separate order scheduling the Rule 16 Conference will be issued by the Chambers of United States Magistrate Judge Edwards.